IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| U.S. Equal Employment Opportunity Commission, | C/A No.: 3:16-3545-CMC-SVH |
| Plaintiff, | |
| vs. | |
| Akebono Brake Corporation, | |
| Defendant. | |
| | ORDER |
| Akebono Brake Corporation, | |
| Third-Party Plaintiff, | |
| vs. | |
| Carolina Personnel Services, Inc., and Carolina Industrial Staffing, Inc., Successor in Interest for Carolina Personnel Services, Inc. | |
| Third-Party Defendants. | |

This religious discrimination employment case was brought by the United States Equal Employment Opportunity Commission ("EEOC") based on a charge of discrimination filed by Clintoria Burnett ("Burnett") against Akebono Brake Corporation ("Akebono") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). The case comes

before the court on the EEOC's motion pursuant to Fed. R. Civ. P. 37, to compel Akebono entry onto its West Columbia, South Carolina, facility ("Facility") for the purposes of inspection and videotaping ("Request for Entry"). [ECF No. 73]. The motion having been fully briefed [ECF Nos. 75 and 79], it is ripe for disposition. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.). For the reasons that follow, the court grants in part and denies in part the EEOC's motion to compel.

I. Procedural History

Burnett alleges she was hired by staffing agency Carolina Personnel Services ("CPS") for a job with Akebono. [ECF Nos. 14 at ¶¶ 38; 19 at ¶6]. The EEOC alleges Akebono revoked the offer of employment to Burnett after being informed of her religious belief prohibiting her from wearing pants. [ECF No. 19 at ¶¶ 41, 48]. As a defense, Akebono argues that Burnett's request for accommodation by being permitted to wear skirts in lieu of pants at the Facility was unreasonable and would have created an undue hardship. [ECF No. 72 at 10]. It maintains in its response to the EEOC's interrogatories that accommodation would have been "unreasonable due to the nature of Akebono's business and specifically the work performed at the West Columbia Akebono location." [ECF No. 73-6 at 10]. It claims that

2

"[i]ndividuals wearing loose clothing present a safety risk as their clothing may get caught in the machinery, causing serious injury to the individual." *Id.*

The EEOC previously served on Akebono a broader request for entry upon land for inspection and other purposes on October 13, 2017. [ECF No. 73-8]. Akebono objected to the EEOC's request as unduly speculative, prejudicial, inadmissible, unduly burdensome, overly broad, unreasonable as to time and manner, subject to confidentiality concerns, and intended for the purposes of intrusion, harassment, and increasing the costs of litigation. [ECF No. 73-9]. On December 7, 2017, the court held a telephone conference to address the discovery dispute and denied the EEOC's motion to compel without prejudice to a more narrowly-circumscribed inspection request. [ECF No. 61]. The EEOC subsequently served Akebono with the Request for Entry on December 27, 2017, that requested access to fewer areas of the Facility. [ECF No. 73-10]. Akebono objected to the EEOC's Request for Entry on January 26, 2018, for reasons similar to those given in response to the earlier, broader request. [ECF No. 73-11]. The court again addressed the discovery dispute during a telephone conference on February 7, 2018, and granted the EEOC leave to file a motion to compel. [ECF No. 67]. The EEOC filed the instant motion on February 20, 2018. [ECF No. 73 at 1–2]. In the motion, the EEOC requests that it be permitted to enter, inspect and

videotape: (1) areas of the Facility where "the position described by [Akebono Safety Manager] Tom Stanfield in his deposition as 'washer inspection' is performed"[1]; (2) areas where employees of CPS were placed to perform general assembly positions during the period from October 28, 2014, through October 31, 2014[2]; and (3) all walkways to and from the locations in (1) and (2).[3] *Id.*

II.    Discussion

    A.    Legal Standard

Pursuant to Fed. R. Civ. P. 34(a),

> A party may serve on any other party a request within the scope of Rule 26(b) . . . (2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

A party seeking discovery may move for an order compelling inspection if an adverse party "fails to respond that inspection will be permitted—or fails to permit inspection—as required under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).

---

[1] Burnett testified that she was informed by CPS that she would be inspecting washers. Burnett Dep. 69:23–70:22, 134:3–5, 150:5–22.

[2] Susan Greene ("Greene"), operations manager for CPS, testified that Burnett would have been assigned to an automated assembly position. Greene Dep. 200:21–201:3, 246:13–22.

[3] The EEOC has stipulated that it will agree for its counsel and a certified legal videographer to enter, inspect, and videotape for a period of less than two hours on a Sunday. [ECF No. 73 at 14–15 and 18].

The party seeking discovery must establish its relevancy and proportionality. *Accolla v. Speedway, LLC*, No. 0:17-1972-JMC, 2017 WL 5523040, at *2 (D.S.C. Nov. 17, 2017) (citing *Wilson v. Decibels of Or., Inc.*, No. 1:16-855-CL, 2017 WL 1943955, at *2 (D. Or. May 9, 2017)). Fed. R. Civ. P. 26(b)(1) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id*. The court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

In *Belcher v. Bassett Furniture*, 588 F.2d 904, 908 (4th Cir. 1978), the court recognized that "a greater inquiry into the necessity for inspection" was

warranted because "entry upon a party's premises may entail greater burdens and risks than mere production of documents." Accordingly, "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." *Id.*

"It has been held that the burden rests on the objecting party to convince the court that the inspection request is unnecessary." *North Carolina Environmental Justice Network v. Taylor*, No. 4:12-154-D, 2015 WL 1630602, at *3 (E.D.N.C. Jan. 14, 2015) (citing *Arkansas Game & Fish Comm'n v. United States*, 74 Fed. Cl. 426, 432 (Nov. 16, 2006)); *see also Accolla*, 2017 WL 5523040, at *2 (providing that "the party objecting has the burden of showing the discovery should not be allowed and doing so through 'clarifying, explaining and supporting its objections with competent evidence'") (quoting *Wilson*, 2017 WL 1943955, at *2; *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012)).

B.  Analysis

1.  Relevancy of the EEOC's Request for Entry

The EEOC argues that inspection of the Facility is relevant to Akebono's defense that accommodating Burnett would have created an undue hardship on account of the nature of its business and the work performed at its Facility presented a safety risk to individuals wearing loose clothing. [ECF No. 73 at 11]. The EEOC maintains that Akebono has "put the physical

6

condition and nature of its facility and operations . . . at issue by asserting a safety/undue hardship defense." *Id.* at 12. The EEOC contends that because the deposition testimony of Akebono's employees suggests that walkways, pallets, conveyor belts, machine corners, processes, and other physical and spatial elements of its Facility presented a safety risk to an individual wearing a skirt, it should be allowed to inspect the Facility to assess the validity of these claims. *Id.* at 12.

Akebono argues that the EEOC's Request for Entry and inspection of its Facility is not relevant because the record contains no evidence as to the length, type, or material of the skirt that Burnett proposed to wear in lieu of pants. [ECF No. 75 at 12]. Akebono maintains that without this information, any conclusions drawn from inspection of its Facility would be highly speculative. *Id.* It claims the EEOC is seeking to undertake a "fishing expedition" for evidence that might support its case. *Id.* at 13.

Although Akebono asserts that the record contains no evidence as to the length, type, or material of the skirt that Burnett proposed to wear, the court notes that Akebono has had an opportunity to question her about the length, type, and material of her skirts during a deposition on September 18, 2017. [ECF No. 73-3]. It would be unreasonable for the court to deny the EEOC's request for entry and inspection on account of the record lacking information that Akebono could have obtained during Burnett's deposition.

7

Akebono cites *Belcher*, 588 F.2d at 908, *Johnson v. Mundy Indus. Contractors, Inc.*, No. 7:01-990, 2002 WL 31464985 (E.D.N.C. Mar. 15, 2002), and *E.E.O.C. v. U.S. Bakery*, No. 03-64-HA, 2004 WL 1307915 (D. Or. Feb. 4, 2004) as supporting its position that that the EEOC's request is not relevant to the case. In *Belcher*, 588 F.2d at 909, the court noted the defendant's premises had not been placed in issue because neither the complaint nor the motion for discovery specified any manner of discrimination or department or job classification in which discrimination had occurred. In *Mundy Industrial Contractors*, the court found that the plaintiff had not demonstrated the necessity for the inspection. 2002 WL 31464984, at *4. It noted that the plaintiff had made "little attempt to demonstrate the inspection's relevance" and had not alleged that the physical aspects or features of the defendant's facility contributed to sexual harassment. *Id.*; *see also U.S. Bakery*, 2004 WL 1307915, at *4 (finding that inspection of the premises was not relevant to the plaintiffs' sexual harassment claim because they did not "assert that the physical aspects or features of defendant's facilities contributed to the alleged harassment"); *contra Flick v. Wellpoint, Inc.*, No. 08-211-JVB-PRC, 2009 WL 1564386, at *2 (N.D. Ind. Jun. 2, 2009) (finding that the plaintiffs' request to inspect the offices where the alleged sexual harassment occurred in order to photograph the layout of the offices was relevant under Rule 26 because the specific circumstances of the working environment was a key factor in

establishing that the hostile conduct was so severe or pervasive as to create an abusive working environment).

Unlike the requests for entry and inspection in *Belcher*, *Mundy Industrial Contractors*, and *U.S. Bakery*, Akebono's premises are at issue in the instant case because of its defense that safety concerns rendered unreasonable Burnett's accommodation request to wear a skirt. The court considers the instant case to be more akin to *Eirhart v. Libbey-Owens-Ford Co.*, 93 F.R.D. 370, 371 (N.D. Ill. Dec. 10, 1981), in which the court recognized that the female plaintiffs would have to prove that the height and weight requirements imposed by the defendant were not "bona fide occupational qualifications" necessary to perform job duties. Because Akebono claims that its walkways, pallets, conveyor belts, machine corners, processes, and other physical and spatial elements of its Facility present a safety risk that could not be mitigated through reasonable accommodations of Burnett's need to wear a skirt, the request to inspect the Facility appears relevant to a defense.

2. Proportionality of the EEOC's Request for Entry

To determine whether the discovery request is proportional to the needs of the case, the court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to

relevant information, the parties' resources,[4] the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

      a.    Importance of the Issues at Stake

The EEOC argues this case is important because it involves an employer who is attempting to avoid obligations and liability under Title VII by "hiding behind a staffing agency." ECF No. 73 at 13 (citing *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 410 (4th Cir. 2015) (providing "[t]he joint employment doctrine thus prevents those who effectively employ a worker from evading liability by hiding behind another entity, such as a staffing agency")). Akebono does not challenge the importance of the issues at stake in a Title VII case, but maintains that the EEOC's request is "highly speculative" and "overreaching." Because Akebono's arguments are more pertinent to the scope of the request, the importance of the issues at stake in the action weigh in favor of the EEOC's request.

      b.    Amount in Controversy

The EEOC contends that a jury may award up to $300,000 in compensatory and punitive damages, pursuant to the Civil Rights Act of 1991. [ECF No. 73 at 13]. Akebono maintains that the amount of back wages

---

[4] Because Akebono does not challenge the resources of either party, it is unnecessary for the court to evaluate this factor. *See* ECF No. 75 at 14.

owed to Burnett would be less than $10,000. [ECF No. 75 at 14]. It concedes that the statutory damage cap is up to $300,000, but argues that the EEOC should not be permitted entry upon land based on the statutory cap. *Id.* Although the EEOC states that it is seeking compensatory and punitive damages in this case in addition to Burnett's backpay, it provides no basis or estimate for the amount of compensatory damages. Based on the limited information provided, the court is not persuaded that the EEOC is likely to be awarded compensatory or punitive damages up to the statutory damage cap. The undersigned finds that the amount in controversy factor weighs in favor of Akebono.

      c.      Parties' Relative Access to Relevant Information

The EEOC argues that entry to the Facility is necessary to evaluate the validity of its assertion that accommodating Burnett's attire would present a safety risk. [ECF No. 73 at 15]. It maintains that it cannot obtain an accurate and meaningful visualization of the alleged safety concerns Akebono purports to be present without inspecting the Facility. *Id.* at 14. Akebono argues that inspecting and videotaping is unnecessary because the EEOC has Stanfield's testimony, which documents the various safety concerns that would arise from an employee wearing a skirt. [ECF No. 75 at 5]. It maintains that Stanfield's deposition included "specific descriptions of the layout of Akebono's West Columbia facility, the machining and operations that go on in

11

each area, the type of clothing individuals are permitted to wear in each area, and finished with a color-coded map of the facility." *Id.* at 11. The EEOC claims that the entry and inspection is necessary because Stanfield was unable to answer a number of questions regarding safety concerns during his deposition. [ECF No. 79 at 3].

Akebono cites *Equal Employment Opportunity Commission v. Life Technologies Corporation*, 2010 WL 11553083 (D. Md. May 13, 2010), to support its argument that the EEOC's request for entry and videotaping is duplicative of discovery already in the record. [ECF No. 75 at 12]. However, in *Life Technologies*, the defendant did not maintain that its physical premises precluded the requested accommodation. 2010 WL 11553083, at *2–3. In addition, while Akebono points out that the record contained evidence regarding the layout and safety concerns in the form of Stanfield's testimony, the evidence as to Akebono's safety concerns lacks the detail of the evidence in the record in *Life Technologies*.[5] Thus, the parties' relative access to

---

[5] The court notes that in *Life Technologies Corporation*, 2010 WL 11553083, at *1, the court pointed out that the plaintiff had rejected the defendant's offer of "a three hour inspection and videotaping either after business hours or during non-peak hours." It stated "[i]n light of the concessions Defendant offered to avoid the need for this motion, it would appear that the parties would be able to agree on a more limited inspection that would enable the EEOC to obtain the photographs and diagram without the need of further involvement of the court." *Id.*, at *3 n.1. Therefore, while the court granted the defendant's motion for a protective order prohibiting the inspection, it indicated that a more limited scope of entry and inspection might be allowed.

relevant information weighs in favor of allowing the EEOC's request for entry and inspection.

        d.      Importance of Discovery in Resolving the Issues

Given the conflicting testimony regarding the position in which Burnett would have been placed if she had worked at Akebono, it is not clear that the request will help to resolve the issues. Although the EEOC has indicated that it seeks to use the video to show a jury how Burnett would have worked, it is unclear whether the discovery gleaned from such a request would be admissible, particularly if there is speculation about the position for which she was hired. In addition, even if admissible, it is not clear to the undersigned that the information gained from the request will significantly add to the discovery already conducted to aid the trier in fact in resolving this issue. However, if the EEOC is able to definitively show that Burnett could have performed the essential functions of the job in a skirt, the discovery may aid in resolving one issue in the case. The undersigned finds that an analysis of the importance of the discovery in resolving the issues weighs equally to both parties.

        e.      Burden and Expense of Entry and Inspection

Akebono argues that the EEOC's proposed entry, inspection, and videotaping presents concerns with respect to safety, business disruption, and privacy and confidentiality and is overly broad in scope. [ECF No. 75]. It

requests that, if the court is inclined to grant the EEOC's request, it limit inspection to the "washer inspector" area and use still photography, as opposed to videography to protect confidential processes and maintain employees' privacy. *Id.* at 15.

The EEOC argues Akebono's concerns related to inspection are inconsistent with Akebono's Human Resources Manager Wanda Herron's ("Herron's") deposition testimony that "a lot of visitors" came through its Facility each week. [ECF No. 73 at 16 (citing Herron Dep. 59:20–61:8)]. The EEOC maintains that use of videography is particularly important because still photography cannot capture the movement of machines that Akebono claimed would present safety risks. [ECF No. 73 at 18]. Akebono cites *Hoffman v. Fifth Generation, Inc.*, No. 14-2569-JM-JLB, 2015 WL 7582425, at *3 (S.D. Cal. Nov. 25, 2015), and *Soler v. County of San Diego*, No. 14-470-MMA (RBB), 2016 WL 3460255, at *4 (S.D. Cal. Jun. 24, 2016),[6] as recognizing that a videotaped site inspection poses significant safety risks.

Courts have allowed for entry in other employment settings that do not present particular safety risks. *See Campbell v. Sedgwick Detert, Moran & Arnold*, No. 11-642-ES-SCM, 2013 WL 1314429 (D.N.J. Mar. 28, 2013) (allowing the plaintiff to videotape an inspection of the defendant's office for a

---

[6] The undersigned notes that the courts allowed the plaintiffs to enter and inspect the defendant's premises in both cases, but denied the plaintiffs' requests to videotape the inspection.

period not to exceed 60 minutes at a date and time of the defendant's choosing); *Morris v. Cabellas*, No. 10-2559-EFM-GLR, 2011 WL 2516904 (D. Kan. Jun. 23, 2011) (allowing for videotaping of the location where the plaintiff was previously employed); *Karlsson v. Kona Blue Water Farms, LLC*, No. 07-242-BMK, 2008 WL 11345940 (D. Haw. Jun. 23, 2008) (allowing the plaintiff access to defendant's dock space and vessels to record the manner in which the he alleged feed bags were loaded during the course of his employment).

The undersigned finds that requiring a business to allow a government agency to visit its Facility to videotape its manufacturing and machining process is a greater burden on Akebono related to safety, business disruption, and privacy and confidentiality concerns than ordinary visitors. For this reason, the undersigned finds the scope of the Request for Entry should be granted in more-narrowly defined terms. Specifically, the undersigned grants the motion to allow two counsel for the EEOC and a legal photographer to enter, inspect, and take still photography of the "washer inspection" area (consistent with the deposition testimony of Burnett and Stanfield) for 60 minutes on a date of Akebono's choosing. As so narrowed, the undersigned finds that the burden weighs in favor of the EEOC.

III. Conclusion

In light of the analysis of the factors outlined in Fed. R. Civ. P. 26(b)(1), the EEOC's motion to compel is granted as narrowed to comport with the proportionality of this case. Specifically, the EEOC's request for entry upon land is granted to the extent it requests two counsel for the EEOC and a legal photographer to enter, inspect, and take still photography of the "washer inspection" area (consistent with the deposition testimony of Burnett and Stanfield) not to exceed 60 minutes on a date of Akebono's choosing before the close of discovery (April 10, 2018) under the court's Fourth Amended Scheduling Order [ECF No. 68].

IT IS SO ORDERED.

March 15, 2018  Shiva V. Hodges
Columbia, South Carolina  United States Magistrate Judge